CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 0 6 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GREGORY C. NESTER, | ) |
| | ) |
| **Plaintiff** | ) |
| v. | ) Civil Action No. 7:04cv357 |
| | ) |
| JO ANNE B. BARNHART, | ) By: Michael F. Urbanski |
| COMMISSIONER OF SOCIAL SECURITY | ) United States Magistrate Judge |
| | ) |
| **Defendant** | ) |

## MEMORANDUM OPINION

Plaintiff Gregory C. Nester ("Nester") brings this action pursuant to 42 U.S.C. § 405(g) for review of the decision of the Commissioner of Social Security denying his claim for disability insurance benefits ("DIB") and Social Security Income ("SSI") under Title II and XIV of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The parties have consented to the undersigned Magistrate Judge's jurisdiction over this matter, and the case is now before the court on cross-motions for summary judgment. Having reviewed the record and after briefing and oral argument, the case is now ripe for decision.

This case involves Nester's claim for disability based on alleged back pain. Nester argues that the case should be remanded to allow the Commissioner to consider evidence of Nester's successful back surgery which occurred after the Administrative Law Judge's ("ALJ's") decision. Since Nester's back surgery apparently was successful, he suggests that the remand should result in a closed period of disability. In response, the Commissioner argues that the new evidence does not concern the relevant time period and cannot be considered. Further, the Commissioner argues that the ALJ's decision that Nester's back pain did not preclude all substantial gainful activity was well supported in the record and should be affirmed.

After considering the record, briefs and oral argument of counsel, it is clear that the decision of the Commissioner was supported by substantial evidence and should be affirmed. The record contains substantial evidence to support the ALJ's decision that Nester's back pain did not functionally preclude all substantial gainful activity. The additional evidence concerning Nester's subsequent treatment and surgery does not alter this result. While Nester's later records establish that he had back surgery and obtained a good result, this subsequent history does not compel the conclusion that the Commissioner's earlier disability decision was factually unsupported or legally erroneous. Indeed, it was neither. As such, there is no basis in this case to either reverse or remand the Commissioner's disability determination.

## STANDARD OF REVIEW

The court's review is limited to a determination as to whether there is a substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan; 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

## FACTUAL AND ADMINISTRATIVE HISTORY

At the time of the ALJ's decision, plaintiff was thirty-one years old and had a high school education. (Transcript, hereinafter "R." at 17, 112) Nester previously worked as a sheet metal worker, a construction laborer and foreman. (R. 112, 117) While working as a construction

foreman on March 8, 2001, Nester, then age 29, claims he hurt his back moving azalea bushes. Plaintiff described his pain as a sharp, stabbing pain burning into his left leg. (R. 182)

Shortly afterwards, plaintiff was seen in a hospital emergency room by William Refvem, M.D., an orthopedist, for back strain. (R. 168-70) X-ray images taken on March 11, 2001 showed mild disc space narrowing in plaintiff's lower lumbar spine. An MRI taken on March 27, 2001 suggested a small central disc herniation at L5-S1. (R. 167) Dr. Refvem prescribed pain medication, two epidural steroid injections, and after a month referred plaintiff to a neurosurgeon for further evaluation. (R. 168-70, 233-35, 238-39, 243-51) Initially, Nester was excused from work for a week, (R. 170), but that period grew as he continued to complain of lumbar pain down his left leg. (R. 169)

On May 7, 2001, Nester was evaluated by a neurosurgeon, Dr. William O. Bell. (R. 182-83) Dr. Bell's report noted decreased lumbar lordosis, tenderness over the upper and lower lumbar spine, spasms in his vertebral area, limited lumbar flexion and extension, and positive straight leg raises at 90 degrees on the left. At that time, Bell noted that he did not feel surgery would improve Nester's situation, prescribed physical therapy, and noted a return to work in two months. Dr. Bell noted that Nester may need a myelogram if he was not improved in two months, and further noted that he may need vocational rehabilitation for job retraining. (R. 183)

Nester was evaluated for physical therapy on May 16, 2001, at which time it was noted that his symptoms were consistent with low back strain with left lower leg pain. (R. 229-32) The physical therapy evaluation stated that "[h]e is a fair to good candidate for physical therapy to improve lumbar range of motion and lower extremity strength as well as decrease pain and return patient to prior level of function." (R. 230) After three treatment sessions, Nester was discharged from physical therapy because "patient never returned for therapy." (R. 242)

3

Dr. Bell again saw Nester on June 25, 2001 following a myelogram and CT scan. These tests did not show any abnormalities or nerve root compression, and Dr. Bell suggested that his symptoms "may be arising out of the discs or lumbrosacral sprain." (R. 181) Because of Nester's young age, Dr. Bell did not recommend surgery. Instead, he suggested vocational retraining in construction engineering. Dr. Bell noted that Nester was at maximum medical improvement and rated his permanent partial disability at 10%. (R. 181) On July 18, 2001, Dr. Bell completed a Certificate to Return to Work or School, with the following permanent restrictions on Nester: No heights; No bending; Limited crawling or twisting; Limited reaching or overhead work; Lifting limited to 10 lbs.; Standing limited to 15 minutes; Sitting limited to 30 minutes; Driving limited to 15 minutes; Limited use of left leg. (R. 180)

On October 5, 2001, plaintiff filed an application for DIB, (R. 16, 65-68), but that claim was denied by initial determination on November 28, 2001. (R. 16) Nester apparently abandoned that claim, (R. 16), and returned to work from December, 2001 to April, 2002, as a foreman on a bridge construction crew. Nester testified that his brother was the job superintendent, and because of that he did not have to perform its physical demands. Nester testified that he was terminated when it was found out that he was not performing his job. (R. 320-22) The ALJ considered this to be an unsuccessful work attempt, noting "[i]n view of the ultimate decision in this case, and giving claimant every benefit, the undersigned finds the first step of the evaluation is not determinative." (R. 20)

The record reflects no further treatment for Nester's back from June, 2001 until September 7, 2002. On that day, Nester was seen by a new doctor, Steven Huff, and complained of daily lumbar pain, radiating into both legs. As reported to him, Dr. Huff indicated that Nester's "disability appears significant." (R. 198) While Dr. Huff's note reflects a referral to the

4

clinic at Winston-Salem, nothing appears in the record until October 31, 2002 when Nester was seen at the Twin County Hospital Emergency Room. The ER record notes that Nester "slipped going down steps, pulled muscles in chest, has history of degenerative disc." (R. 210) An x-ray of the lumbar spine taken at that time noted "[n]o fracture, subluxation or bony destruction. . . . Moderate L5-S1 disc space narrowing and focal L5 posteroinferior degenerative sclerosis are noted." (R. 220) In mid-November, 2002, Nester appeared again at the Twin County ER complaining of moderate-severe low back pain, stating that he could not get pain medications from a doctor. (R. 193) Nester was prescribed pain medication by the ER physician, but was advised that no further pain medication would be prescribed for this problem; "these would need to come from PCP or back specialist." (R. 194) In early 2003, Nester appeared at the Northern Hospital of Surry County Emergency Room complaining of a twisting injury to his knee and back pain following a fall caused by putting his foot in a hole. (R. 256)

On September 27, 2002, Nester again filed an application for social security benefits. (R. 70-72, 291-95) Following an administrative hearing, an ALJ determined Nester not to be disabled, (R. 16-26), and the Appeals Council denied Nester's request for review on June 21, 2004, (R. 6-9), giving rise to this appeal. Nester submitted to the Appeals Council a Medical Evaluation from Dr. Huff dated November 15, 2003 which indicates that Nester is "unable" to lift, bend, stoop or climb, but restrictions on other activities such as sitting, standing, walking, driving and reaching are noted as "limited." (R. 311) Dr. Huff's conclusion is consistent with his notes of his limited treatment of Nester. He writes: "Most of the info on this form is subjective – I don't have the means for a true functional analysis." (R. 312)

After this suit was filed, Nester submitted a number of additional medical records reflecting Nester's subsequent treatment. These records reflect that in an October 14, 2004 visit,

5

Dr. Stephen A. Grubb of Independence, Virginia opined that Nester was a "candidate for a L1-2 decompression, stabilization, and fusion." (Affidavit of Jean C. Jennings, Docket No. 17, at 14) This surgery was performed on November 29, 2004, and Dr. Grubb's note of February 18, 2005 reflects that "[p]laintiff's pre-operative pain has totally resolved." (Id. at 28)

## ANALYSIS

### I. Substantial Evidence Supports the ALJ's Initial Decision

The Commissioner uses a five-step process in evaluating social security disability claims. See 20 C.F.R. § 404.1520 (2003). See also Heckler v. Campbell, 461 U.S. 458, 460-62 (1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and (5) if not, whether he can perform other work. See C.F.R. § 404.1520 (2003). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. See 20 C.F.R. § 404.1520(a) (2003).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. See U.S.C.A. § 423(d)(2); McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall, 658 F.2d at 264-65; Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).

6

Here, the ALJ walked through the five step analysis and found Nester not disabled. Under the first step, he found that Nester's work as a concrete foreman after his alleged onset date was merely an unsuccessful work attempt and not substantial gainful work.[1] (R. 20) The ALJ also found that Nester satisfied the next two steps because he suffered from "degenerative disc disease of the lumbar spine, an impairment that is severe within the meaning of the regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (R. 20) Additionally, he found that Nester cannot perform his prior relevant work but retains the residual functional capacity for light work.[2] (R. 23) Finally, the ALJ concluded that Nester could make a successful adjustment to work that exists in significant numbers in the national economy.[3] Based on these findings, the ALJ concluded that Nester was not under a "disability" at any time through the date of the decision. (R. 26)

Plaintiff argues on brief that the Commissioner erred in not finding him disabled because he says substantial evidence exists in the record that shows he meets the regulatory listing 1.04B in Appendix 1, Subpart P, Regulations No. 4. This listing describes impairments that will qualify a claimant as disabled because of disorders of the spine. To meet this listing, the claimant must have a disorder of the spine, such as degenerative disc disease, resulting in compromise of a

---

[1] Nester claimed he was terminated because he could not perform the physical demands of the job. (R. 20)

[2] The ALJ found that Nester retained the residual functional capacity to lift, carry, or both lift and carry 20 pounds occasionally and 10 pounds frequently, stand or walk a total of six hours in an eight hour workday, and sit a total of six hours in an eight hour workday. (R. 23)

[3] Examples of such jobs include work as a cashier (with 21,000 positions in the state), a stock or inventory clerk (with 21,000 positions in the state), and print press operator (with 1,400 positions in the state). (R. 24)

7

nerve root or the spinal cord. 20 C.F.R. pt. 404. subpt. P, app. 1, § 1.04. Additionally, the claimant must meet one of three other requirements. Id.

Here, Nester relies on the second requirement – that the claimant have "[s]pinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours." Id. at 1.04B. Nester asserts that the medical evidence in the record clearly establishes that he meets this listing because of his repeated complaints about chronic back pain.

To meet a listing, a claimant must show that he meets all of the criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Nester, however, bases his theory on the last clause of the listing, i.e., that the condition manifest in "severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours." 20 C.F.R. pt.404, subpt. P, app. 1, § 1.04B. Unfortunately, his argument ignores the first clause, which requires that the claimant produce evidence that confirms spinal arachnoiditis – a condition characterized by adhesive thickening of the arachnoid which may cause pain or incontinence. Id. at § 1.00(K)(2)(a).

No evidence of spinal arachnoiditis exists in the record. Plaintiff cannot cite any evidence of an operative note, pathology report, or appropriate medically acceptable imaging that confirms spinal arachnoiditis. At oral argument on April 28, 2005, Nester agreed that the record did not contain any finding of spinal arachnoiditis. There is, in short, no evidence that Nester met the requirements of a listed impairment. As such, this is not a Step Three case.

As the ALJ found that Nester could not return to his past relevant work, (R. 23), this case turns therefore on the familiar issue at Step Five, i.e., whether there is substantial evidence to

8

support the ALJ's finding that other work existed in the national economy that plaintiff can perform. In this regard, Nester argues that the ALJ erred by not according appropriate weight to two hypothetical questions addressed to the vocational expert ("VE") to which the VE responded that a person having those impairments had no occupational options. (R. 345-46) The ALJ's determination that the record did not support the predicate for Nester's hypotheticals is supported by the evidence. Because the hypothetical that the ALJ chose to accept fairly set forth all of the limitations found by the ALJ, the vocational expert's testimony supports the ALJ's conclusion that plaintiff was not disabled. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The ALJ was not required to consider limitations that he did not believe was supported by the evidence.

Indeed, in this case, as the ALJ correctly concluded, Nester's evidence of disability was palpably thin and insufficient to meet his burden. Nester sustained a back strain in 2001, fell down some stairs in 2002 and twisted a knee while stepping in a hole in 2003. CT and myelogram studies revealed no abnormalities. Nester quit his prescribed physical therapy in 2001 and did not seek any medical treatment for his back between June, 2001 to September 2002. The timing and gaps in Nester's efforts to obtain medical treatment also adversely impacted the credibility of his complaints. State agency medical consultants determined that Nester had the capacity to do light work, and the ALJ agreed. (R. 23). The ALJ appropriately discounted Dr. Huff's opinion as parroting Nester's subjective complaints, (R.21), a point which Dr. Huff's own November 15, 2003 Medical Evaluation makes clear. Further, Dr. Bell rated Nester as having only a 10% permanent partial disability. (R. 181) Finally, the ALJ properly found Nester's testimony not credible because his descriptions of his limitations appear inconsistent and out of proportion to the documented objective medical findings in the record. (R. 22)

9

Plaintiff also argues that his case should be remanded because his set of circumstances are "very similar" to Milam v. Barnhart, 4:03cv25 (W.D. Va., Jan. 30, 2004). Nester contends that the court in Milam remanded the case to the Commissioner because the ALJ did not give appropriate weight to a treating physician's opinion that the claimant could not work and placed too much emphasis on the views of a state agency physician and on the claimant's daily activities.

This case, however, presents neither the legal or factual issues raised in Milam. In recommending remand of the case, the magistrate judge noted that the record before the ALJ made it clear that plaintiff suffered from a "serious back impairment that had led to surgery." Id. at 2. Here in contrast, Nester underwent surgery over eight months after the Commissioner's decision became final. Further, the magistrate judge's recommendation of a remand in Milam was based upon the Appeals Council's duty to evaluate evidence tendered to it and state reasons for denying review. Id. at 5. In this case, no evidence of Nester's subsequent surgery was presented to the Appeals Council, and the two documents which were submitted, counsel's letter of May 7, 2004, (R. 308), and Dr. Huff's "subjective" medical evaluation, (R. 311-12), hardly provide any basis upon which the Commissioner could award benefits in this case. See Wilkins v. Secretary, Dept. of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991); see generally Robertson v. Barnhart, No. 7:04cv00033 (W.D. Va., Nov. 30, 2004) As such, the Milam opinion is not determinative of the outcome of this case.

Given the deferential standard of review provided under 42 U.S.C. 405(g), the court must affirm the decision of the ALJ as there is more than enough evidence to support the conclusion that plaintiff was not disabled as defined under the Social Security Act. See Pierce v.

Underwood, 407 U.S. 552, 565 (1988); King v. Califano, 559 F.2d 597, 599 (4th Cir. 1979). As such, the Court will grant the Commissioner's motion for summary judgment.

II.      **Additional Evidence Presented to the Appeal's Council After ALJ's Decision**.

Plaintiff has also moved to remand the case to the Commissioner for the consideration of additional evidence. A district court may remand a social security case on the basis of newly discovered evidence, a "sentence six" remand, when plaintiff satisfies four prerequisites. 42 U.S.C. § 405(g); Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). First, the evidence must be "new." Borders, 777 F.2d at 955 (holding "new" evidence is "relevant to the determination of disability at the time the application was first filed and not merely cumulative") (quoting Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983)). Second, it must be material. Id. Third, there must be a good cause for the "failure to submit the evidence when the claim was before the Secretary." Id. Fourth, the claimant must make "at least a general showing of the nature of the new evidence." Id. (quoting King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

Nester recognizes that the surgical evidence postdates the period considered by the Commissioner, but argues nonetheless that the surgical evidence and the successful result obtained by Nester proves that he had a serious, disabling back condition prior to the surgery. The mere fact that Nester had back surgery and felt better eight months after the ALJ's decision does not mean that the ALJ's decision was either unsupported or flawed. The medical records reflect a diagnosis of lower back strain, which now appear to be resolved following the 2004 surgery. While no one disputes that Nester had pain associated with this strain, the pertinent issue is not whether he had a strained back or had surgery. Rather the appropriate inquiry is whether Nester's back pain was such that it precluded any substantial gainful activity. After carefully scrutinizing the record, the ALJ concluded that Nester retained the residual functional

capacity to do certain work, that conclusion is amply borne out in the record. Given the record in this case before the ALJ, the evidence clearly supports a finding of no disability.

## CONCLUSION

For the reasons outlined above, by accompanying Order, defendant's motion for summary judgment is granted.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Enter this 6V day of May, 2004.

_____
Michael F. Urbanski
United States Magistrate Judge